IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

SHERRI FRANCES BEALS                                                                      PLAINTIFF

v.                                          CIVIL NO. 16-6013

NANCY A. BERRYHILL,
Acting Commissioner, Social Security Administration[1]                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Sherri Francis Beals, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB") benefits under the provisions of Title II of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her application for DIB on March 4, 2014. (ECF No. 8, p. 76). In her application, Plaintiff alleges disability due to chronic obstructive pulmonary disease ("COPD"), gastric bleeds, arthritis, obesity, depression, skin cancer of the left ear, face, arm, and back, high blood pressure, and high cholesterol. (ECF No. 8, p. 190). Plaintiff alleges an

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

onset date of December 28, 2012. (ECF No. 8, pp. 76, 186). This application was denied initially and again upon reconsideration. (ECF No. 8, pp. 43-71).

Thereafter, Plaintiff requested an administrative hearing on her denied application, and this hearing request was granted. (ECF No. 8, pp. 95, 109). Plaintiff's administrative hearing was held on June 19, 2015, in Little Rock, Arkansas (ECF No. 8, pp. 14-42). Plaintiff was present via teleconference and was represented by Donald Pullen. Id. Plaintiff and Vocational Expert ("VE") William David Elmore testified at this hearing. Id. At the time of this hearing, Plaintiff was fifty-six (56) years old, which is defined as a "person of advanced age" under 20 C.F.R. 404.1563(e). (ECF No. 15, p. 59). As for her level of education, Plaintiff earned a GED. Id.

After this hearing, on August 28, 2015, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (ECF No. 8, pp. 73-85). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through June 30, 2016. (ECF No. 8, p. 78, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since December 28, 2012, her alleged onset date. (ECF No. 8, p. 78, Finding 2). The ALJ determined Plaintiff had the following severe impairments: bilateral knee surgery, hypertension, and COPD. (ECF No. 8, pp. 78-79, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Part 404 ("Listings"). (ECF No. 8, pp. 79-80, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 8, pp. 80-83, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found

her claimed limitations were not entirely credible. Id. Second, the ALJ determined Plaintiff retained the RFC to perform:

> light work as defined in 20 C.F.R. 404.1567(b) except she is able to perform work that involves occasional climbing, balancing, stooping, and bending, but no crouching, kneeling, or crawling. Additionally, she must avoid work that involves exposure to excessive chemicals, noise, humidity, dust, fumes, temperature extremes, vibrations, gases, or other pulmonary irritants.

Id.

The ALJ then determined Plaintiff was unable to perform her Past Relevant Work ("PRW"). (ECF No. 8, pp. 83-84, Finding 6). The ALJ determined Plaintiff had acquired transferrable skills from her PRW. (ECF No. 8, p. 84, Finding 9). The VE testified at the administrative hearing regarding these issues. (ECF No. 8, pp. 36-41). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, such as a shipping order clerk and a general office clerk. (ECF No. 8, pp. 84-85, Finding 10). Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from December 28, 2012, through August 28, 2015, the date of the ALJ's decision. (ECF No. 8, p. 85, Finding 11).

Thereafter, on September 10, 2015, Plaintiff requested a review by the Appeals Council (ECF. No. 8, pp. 12-13). The Appeals Council denied this request on December 16, 2015. (ECF No. 8, pp. 5-10). On February 8, 2016, Plaintiff filed the present appeal with this Court. (ECF No. 1). The parties consented to the jurisdiction of this Court on February 12, 2016. (ECF No. 5). This case is now ready for decision.[2]

---

[2] Defendant, in his brief, requests to strike the portion of Plaintiff's brief which exceeds ten pages in length for violation of this Court's Social Security Scheduling Order entered on

3

## II.     Applicable Law:

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. Teague v. Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. Blackburn v. Colvin, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. Id.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); See also 42 U.S.C. §§ 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

---

April 20, 2016. The Court will not grant the request to strike, but does admonish Plaintiff's counsel to comply with the page limitation in future cases.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520(a)(4). Only if she reaches the final stage does the fact finder consider Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v).

### III. Discussion:

Plaintiff argues the following issues on appeal: 1) the ALJ failed to assess the severity of Plaintiff's impairments, specifically her ability to stand, walk, and/or sit with her severe osteoarthritis of both knees and ineffective ambulation; 2) the ALJ erred in finding Plaintiff was not disabled as a result of her morbid obesity (BMI 47, level III), emphysema with chronic interstitial disease, and bilateral knee replacement; and 3) the ALJ erred in assessing Plaintiff's RFC at the light exertional level without consideration of Plaintiff's bilateral total knee replacement, obesity, and chronic obstructive lung disease. (ECF No. 9).

#### A. Listing 1.02

Plaintiff specifically contends she met the listing requirements of Listing 1.02. (ECF No. 9, pp. 3-7). The ALJ determined as follows:

> In terms of her knees, [Plaintiff's] condition does not satisfy the criteria of listing 1.02 because she is able to ambulate effectively. As discussed more

5

> below, treatment records establish bilateral knee osteoarthritis, and that [Plaintiff] underwent double arthroplasty in February of 2015. However, while physical examinations document antalgic gait both before and after this procedure, they do not demonstrate an inability to ambulate effectively, as required by listing 1.02. (See, for example, Exhibit 3F/8; and 25F/31).

(ECF No. 8, p. 79). Section 1.00(B)(2)(b) is not a listing in and of itself, but defines what the regulations mean by a claimant's inability to ambulate effectively for purposes of determining whether a claimant meets the criteria of Listing 1.02 considered by the ALJ. The regulation states:

> b. What We Mean by Inability To Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. The must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R., Part 404, Subpt. P. App. 1 § 1.00(B)(2)(b). In the present case, substantial evidence in the record as a whole supports the ALJ's determination that Plaintiff did not meet the criteria of listing 1.02. While the record contains thorough objective diagnostic testing which shows Plaintiff suffered from moderate to severe degenerative joint disease in both knees, COPD, and obesity, the record does not contain any objective evidence Plaintiff was unable to effectively

6

ambulate as defined by section 1.00(B)(2)(b) of the regulation. Plaintiff underwent a bilateral total knee arthroplasty on February 18, 2015. (ECF No. 8-2, p. 170). During her hospital stay, Plaintiff understandably had significant difficulty ambulating before undergoing physical therapy. (ECF No. 8-2, p. 228, 236). Upon her discharge, Dr. P. Ross Bandy noted the following:

> During rehab, eating increased from supervision to modified independent. Grooming increased from supervision to modified independent. Bathing increased from mod assist to supervision. Upper body dressing increased from supervision to modified independent. Lower body dressing increased from mod assist to supervision. Toilet increased from max assistance to modified independent. Bladder is increased from supervision to modified independent. Bed to chair, toilet tub transfers increased from mod assist to 80 feet x3 rolling walker with standby assist. Balance was satisfactory. She had functional range of motion of each knee of approximately 0 degrees-95 degrees.

(ECF No. 8-2, p. 237). Plaintiff was discharged home with a rolling walker. Id. Three weeks after her surgery, Plaintiff reported doing well, with minor pain, and active engagement in physical therapy. (ECF No. 8-2, p. 172). Dr. Michael Young noted Plaintiff's knees showed minimal swelling and bilateral knee range of motion was from zero to one-hundred degrees. (ECF No. 8-2, p. 177). Dr. Young prescribed outpatient physical therapy two to three times per week for four to six weeks. Id.

On March 24, 2015, Plaintiff reported to her physical therapist her pain was a two on a ten-point scale and that her exercises were going well. (ECF No. 8-2, p. 269). Plaintiff exercised for forty minutes and the physical therapist noted Plaintiff "tolerated treatment well with no adverse effects," and that she "demonstrated good technique of exercises," and he expected Plaintiff "will be able to progress rather quickly." Id. On her following appointment on March 27, 2015, Plaintiff rated her pain as a three out of ten upon arrival and then as a zero out of ten after exercising for forty minutes. (ECF No. 8-2, pp. 270-71).

7

Plaintiff returned to Dr. Young on April 2, 2015 for her seven-week post-surgery follow-up where Dr. Young again reported Plaintiff had no significant pain and was actively engaging in physical therapy. (ECF No. 8-2, p. 180). The report on June 2, 2015, when Plaintiff saw Dr. Jared Wilson, for Plaintiff's three and a half-month follow-up was the same. (ECF No. 8-2, p. 183). Dr. Wilson noted Plaintiff's bilateral knee range of motion had improved to zero to one hundred twenty degrees and remarked, "[Plaintiff] is progressing well. They are happy with the results at this time." (ECF No. 8-2, p. 187). Plaintiff's only complaint approximately seven months after surgery, on September 21, 2015, was that "she says occasionally her right knee slips," but that she had no significant pain. (ECF No. 8-2, p. 413).

Despite Plaintiff's subjective testimony, Plaintiff has not directed this Court to any objective evidence in the record Plaintiff was unable to independently initiate, sustain, or complete her activities after recovering from her bilateral knee replacement surgery. As discussed above, the objective evidence in the record indicates Plaintiff's condition vastly improved after her bilateral knee replacement surgery and subsequent physical therapy. Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling"). Based on the foregoing, I find substantial evidence in the record as a whole supports the ALJ's determination Plaintiff could ambulate effectively. Moreover, in accordance with the above discussion, the ALJ's determination Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listings is supported by substantial evidence in the record as a whole.

### B. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 946, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. The ALJ noted Plaintiff was occasionally non-compliant with treatment, including with her failure to diet and exercise, her impairments were overall responsive to treatment and especially concerning her acute impairments, and that Plaintiff continued to smoke against medical advice. (ECF No. 8, pp. 81-82). The ALJ gave some credit to Plaintiff's allegations by limiting her RFC to work at the light exertion level with extensive postural and environmental limitations. Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court finds substantial evidence supports the ALJ's credibility assessment and because the ALJ provided good reasons for discounting Plaintiff's subjective complaints, this Court defers to the ALJ's credibility determination. see Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (this

9

Court defers to the ALJ's credibility determination when it is supported by good reasons and substantial evidence).

### C.    ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545. It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

Plaintiff specifically argues that the ALJ failed to incorporate limitations based on Plaintiff's obesity into her RFC determination. SSR 02-1(p) provides guidance for evaluating obesity. SSR 02-1(p) provides obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. Obesity may also affect an individual's ability to do postural functions, such as climbing, balance, stooping, and crouching. Moreover, SSR 02-1(p) further provides that the combined effects of obesity with other impairments may be

10

greater than might be expected without obesity. The ALJ is required to consider each of Plaintiff's severe impairments and all of her impairments in combination in determining her RFC. see Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

In the present case, Plaintiff correctly points out obesity may result in exertional or postural limitations or interfere with a claimant's ability to sustain a function over time, but neither does the record contain nor does the Plaintiff direct this Court to any objective medical findings to support Plaintiff suffered any greater degree of impairment because of her obesity than that accounted for by the ALJ's RFC determination. While Plaintiff argues the ALJ erred by not considering Plaintiff's obesity a severe impairment in and of itself, Plaintiff has cited only her weight, BMI, and obesity diagnosis. (ECF No. 9); see Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) (mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis). The ALJ, moreover, considered the combined effects of Plaintiff's obesity with her COPD, hypertension, and other severe and non-severe impairments when determining Plaintiff's RFC. (ECF No. 8, p. 79) ("In light of her other physical impairments, [Plaintiff's] obesity is expected to produce additional limitations on her ability to perform work-related activities. The combined impact of these conditions are reflected in the [RFC] identified below"). We presume the ALJ properly discharged his official duties as he stated in his decision. see, e.g., Willburn v. Astrue, 626 F.3d 999, 1003-04 (8th Cir. 2010) (applying the presumption of regularity to conclude the ALJ discharged his official duties as described).

The ALJ also specifically considered Plaintiff's COPD and other breathing problems as well as her bilateral knee replacement. As discussed above and noted by the ALJ, the objective evidence in the record indicates Plaintiff's condition vastly improved after her

11

bilateral knee replacement surgery and subsequent physical therapy. (ECF No. 9, p. 82-83); Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling"). While the ALJ discussed multiple instances when Plaintiff's respiratory and cardiac impairments caused her significant problems, the ALJ noted that at other times Plaintiff's healthcare providers characterized her respiratory impairments as stable, and that her pulmonary functioning was normal at follow-up appointments after receiving treatment. (ECF No. 8, p. 82). Plaintiff cites this Court to her subjective complaints of chest pain and shortness of breath on July 24, 2014, but the objective physical exam conducted by the healthcare provider noted regular rhythm, normal heart sounds, intact distal pulses, no murmur, normal breath effort, normal breath sounds, no respiratory distress, no wheezes, and no rales. (ECF No. 8-1, pp. 182-83). Records from February 13, 2015, Plaintiff's pre-op evaluation, described Plaintiff's respiratory impairments as "consistent with mild obstruction with air-trapping and significantly decreased diffusion capacity." (ECF No. 8-2, p. 124). Those same records, however, note Plaintiff's treatment was conservative: the continued use of Spiriva and her Albuterol inhaler and the addition of Symbicort. Id.; see Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling symptoms). It was further noted during this visit that Plaintiff continued to smoke five cigarettes every day, despite her ongoing symptoms. (ECF No. 8-2, p. 121). Plaintiff further cited to a follow-up appointment for COPD with Dr. Thalia Casimire on May 6, 2015, where Plaintiff complained of intermittent cough and wheezing and dyspnea on exertion, but Dr. Casimire's objective physical examination of Plaintiff's nose, sinuses, throat, airway, neck, lymph nodes, and pulmonary and cardiac systems showed only normal findings. (ECF No. 8-

2, p. 133). The same record also indicated Plaintiff continued to smoke a pack of cigarettes each day despite her ongoing symptoms and having cut back to five cigarettes each day a few months prior, and that Dr. Casimire's treatment plan was to continue prescribed medications, but to substitute Breo for Symbicort because Plaintiff's insurance plan would not cover the cost of Symbicort. (ECF No. 8-2, p. 134). The ALJ gave significant weight to the objective medical evidence and Plaintiff's subjective complaints by limiting Plaintiff to less than a full range of light work with extensive postural and environmental limitations.

The Court notes that in determining Plaintiff's RFC, the ALJ considered the medical opinions of many treating physicians, surgeons, and specialists, as well as those of the non-examining state agency consultants, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

### D.     Hypothetical Questions to the Vocational Expert:

Plaintiff's argument with regard to the hypothetical question posed to the VE is essentially a disagreement with the ALJ's RFC determination. After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments that the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial

evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing the duties of a shipping order clerk or a general office clerk. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.     Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The undersigned further finds that the Plaintiff's Complaint should be, and is hereby dismissed with prejudice.

IT IS SO ORDERED this 7th day of February, 2017.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE